# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ARNETHA EADDY,                :
                                      :
         Plaintiff,               :
                                        :
v.                                     :        No. 09cv1836 (MRK)
                                        :
CITY OF BRIDGEPORT,        :
                                        :
         Defendant.        :

## RULING AND ORDER

Arnetha Eaddy, a former probationary police officer in the Bridgeport Police Department has brought suit against the City of Bridgeport. Ms. Eaddy's Complaint [doc. # 1] asserts two disability discrimination claims, one pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and the other pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1).[1] Following the close of discovery, the Defendant moved for summary judgment. *See* Mot. for Summary Judgment [doc. # 28]. The Court held a telephonic hearing on that motion on February 14, 2011. On the basis of the parties' arguments and the record before it, the Court concludes that there are no disputes as to genuine issues of material fact regarding Ms. Eaddy's ADA discrimination claim, and that Defendant is entitled to summary judgment on that claim as a matter of law. Therefore, for reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 28].

---

[1] In the "Preliminary Statement" of the Complaint, Ms. Eaddy states that she also seeks relief "as a result of the defendant's violation of the provisions of the Family and Medical Leave Act, Title 29 U.S.C. §[]2601, et seq." Compl. [doc. # 1] ¶ 2. However, the Complaint includes only a "First Cause of Action (Violations of the Americans with Disabilities Act)" and a "Second Cause of Action (Claim for Relief Under the Connecticut Fair Employment Practices Act)," and never again mentions the Family and Medical Leave Act ("FMLA"). Ms. Eaddy does not mention the FMLA in her response to Defendant's Motion to Summary Judgment. Nor did Ms. Eaddy's counsel suggest that the Complaint included an FMLA claim during oral argument.

# I.

The following facts are taken from the parties' statements of material facts not in dispute, *see* Def.'s Local R. 56(a)1 Statement [doc. # 28-2]; Pl.'s Local R. 56(a)2 Statement [doc. # 32], and from exhibits submitted in connection with the Motion for Summary Judgment. Unless otherwise indicated, these facts are not contested. Additional facts will be introduced as necessary when the Court turns to analyze Ms. Eaddy's claims.

Ms. Eaddy was appointed, through a competitive civil service selection process, to the position of probationary police officer in the Bridgeport Police Department on July 9, 2007. For most of her probationary employment, Ms. Eaddy was rated by Defendant as performing at a "very good" level.

On April 25, 2008, Ms. Eaddy was involved in heated arguments with other members of the Bridgeport Police Department. After the arguments, Ms. Eaddy went home. Shortly after returning home and, in her own words, feeling "stressed out," Ms. Eaddy checked herself into the hospital. She had suffered an acute self-limiting psychological stress reaction. As a result of that reaction, she was hospitalized for a short period of time.

On May 27, 2008, Chief of Police Bryan T. Norwood sent a letter to the Civil Service Commission recommending that Ms. Eaddy be terminated for lack of fitness for duty. *See* Letter from Bryan T. Norwood to Ralph Jacobs, May 27, 2008, Ex. F to Mem. in Supp. [doc. # 28-1] at 23. Chief Norwood's letter stated, *inter alia*, that he had ordered Ms. Eaddy to undergo a fitness for duty examination by Clinical Psychologist Arnold D. Holzman, Ph.D., and that Dr. Holzman had concluded that Ms. Eaddy was deceptive during the evaluation and that it was "highly likely" that Ms. Eaddy was "not fit for duty." *Id.* Chief Norwood also stated that Ms. Eaddy had an

incident on April 25, 2008 in which she announced that she no longer wanted to be a Police Officer. *Id.*

Although Ms. Eaddy admits that Chief Norwood's letter contained those statements, she denies the substance of the statements, in particular the suggestion that she had said she no longer wanted to be a police officer. *See* Pl.'s Local R. 56(a)2 Statement [doc. # 32] ¶ 9; Pl.'s Local R. 56(a)2 Statement, Pl's Statement of Material Facts [doc. # 32] ¶ 1. Ms. Eaddy's objection to Chief Norwood's claim that she had stated that she no longer wanted to be a police officer is supported by Ms. Eaddy's deposition testimony. When asked at her deposition whether she had made a comment about not wanting to continue as a police officer, Ms. Eaddy responded that she had said something like: "this is unfair, trying to get me to choose. . . . I just want to do my job a lot of this is not worth the stress." *See* Eaddy Dep. [doc. # 31-4] at 22:20-24.

Ms. Eaddy's evaluation by Arnold D. Holzman, Ph.D. had been scheduled by Chief Norwood while Ms. Eaddy was still in the hospital, and on May 15, 2008, after she was released from the hospital, members of the Police Department showed up at her house and instructed her to proceed immediately to Dr. Holzman's office.

In an opinion dated May 15, 2008, Dr. Holzman indicated that he thought it was likely that Ms. Eaddy was not fit for duty. According to Defendant, Dr. Holzman did not make any finding or determination that Ms. Eaddy was disabled. *See* Def.'s Local R. 56(a)1 Statement [doc. # 28-2] ¶ 14. Ms. Eaddy denies that claim, stating that "[t]he clear inference from [Dr.] Holzman's report is that the plaintiff suffered from a psychological impairment which rendered her not fit for duty." *See* Pl.'s Local R. 56(a)2 Statement [doc. # 32] ¶ 14. However, Ms. Eaddy's characterization of Dr. Holzman's findings is not supported by the language of Dr. Holzman's report. In his report, Dr. Holzman concluded:

> Considering Officer Eaddy's lack of effective participation in this Fitness For Duty Evaluation, *I cannot provide a valid determination regarding her behavioral functioning at this time*.
>
> However it is clear that she is either perceiving her situation in a vastly different manner than most other people or that she is unwilling to share important information about herself. *Considering her performance thus far, as well as her recent admission to St. Vincent's it is my impression at this time that it is highly likely that she is not fit for duty.*

Report of Arnold D. Holzman, Ph.D., Ex. G to Mem. in Supp. [doc. # 28-1] at 44-45 (emphasis added). Dr. Holzman, in other words, declined to make any definitive pronouncements regarding Ms. Eaddy's "behavioral functioning," and he did not even address the question of whether Ms. Eaddy suffered from a "psychological impairment."

On June 10, 2008, Ms. Eaddy retained and was evaluated by Stephen D. Sarfaty, Psy.D. Dr. Sarfaty concluded that Ms. Eaddy was fit to return to her position as a police officer. Specifically, Dr. Sarfaty concluded that "[t]he protocol of Officer Eaddy's Fitness for Duty Examination was consistent with being fit for duty with qualification," and that "[t]he prognosis for Officer Eaddy's departmental success was guardedly positive." Report of Stephen D. Sarfaty, Psy.D., Ex. 1 to Mem. in Opp'n [doc. # 31-1] at 15. At the end of the report, Dr. Sarfaty stated that "Officer Arnetha Eaddy was judged to be fit for duty to return to work and complete her probationary period." *Id.* at 16. He also "[s]trongly support[ed] a course of psychotherapy" for Ms. Eaddy. *Id.* It is undisputed that Dr. Sarfaty did not make any finding or determination that Ms. Eaddy was disabled.

According to Defendant, the Civil Service Commission reviewed and considered a variety of factors before deciding to terminate Ms. Eaddy's employment on the basis of her lack of fitness for police duty. *See* Def.'s Local R. 56(a)1 Statement [doc. # 28-2] ¶ 18. This claim is supported by the deposition testimony of the Commissioner, who stated that the Commission

considered all documents that came before the Commission, as well as the testimony of parties including, *inter alia*, Chief Norwood and Ms. Eaddy. *See* Dep. at 26-26, Ex. I to Mem. in Supp. [doc. # 28-1] at 65-66. Ms. Eaddy denies the claim, citing her own deposition testimony. *See* Pl.'s Local R. 56(a)2 Statement [doc. # 32] ¶ 18. However, in her deposition testimony, Ms. Eaddy alleged only that the Commission did not take into account the report of Dr. Sarfaty when it made its decision, not that the Commission did not consider a variety of factors. *See* Eaddy Dep. [doc. # 31-4] at 35-42. The parties agree that the Commission received both Dr. Holzman's report and Dr. Sarfaty's report.

On July 2, 2008, the City of Bridgeport terminated Ms. Eaddy's employment as a police officer. Ms. Eaddy filed this suit on November 10, 2009.

## II.

The standard of review this Court must apply when reviewing a motion for summary judgment pursuant to Rule 56 is a familiar one. Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in the original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment may not rely on mere allegations or denials, but rather must "cit[e] to particular parts of materials in the record" to demonstrate that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to [demonstrate that a fact is genuinely disputed] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 50 (citations omitted).

### III.

Ms. Eaddy claims that Defendant terminated her employment because it regarded her as being afflicted with a physical disability, in violation of the ADA. Claims of intentional discrimination under the ADA are analyzed under a version of the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for claims of employment discrimination under Title VII of the Civil Rights Act of 1964. *See Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir. 2002).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff "must present evidence that animus against the protected group was *a* significant factor in the position taken by

the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id.* at 49 (quotation marks and citation omitted; emphasis in original). "If the plaintiff[] make[s] out a *prima facie* case, the burden of production shifts to the defendant[] to provide a legitimate, nondiscriminatory reason for [its] decision." *Id.* "If the defendant[] meet[s] that burden, 'the *McDonnell Douglas* framework . . . disappears and the sole remaining issue [is] discrimination vel non.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)) (last two alterations in original). "The plaintiff[] must then prove that the defendant[] intentionally discriminated against [her] on a prohibited ground." *Id.* "Where, however, the plaintiff[] 'make[s] a substantial showing' that the defendant['s] proffered explanation was false, 'it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" *Id.* (quoting *Reeves*, 530 U.S. at 146-47 (quotation marks omitted; emphasis in original)).

The Court first considers whether Ms. Eaddy has presented evidence that animus against a class protected by the ADA was a significant factor in the Defendant's decision to terminate Ms. Eaddy's employment. *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 49.

The ADA prohibits "[discrimination] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, the term "disability" means:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).[2] Although Ms. Eaddy suggests that at one point she suffered from a "temporary disabling psychological condition," *see* Mem. in Opp'n [doc. # 31] at 1, neither party has argued that Ms. Eaddy is or was disabled under either of the first two definitions of "disability" in the ADA. This case turns on an argument about whether Ms. Eaddy was "regarded as" disabled.

The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA introduced a new standard for evaluating whether an employee was "regarded as having such an impairment" under definition (C). However, the ADAAA only applies to claims arising on or after January 1, 2009. Since Ms. Eaddy was terminated on July 2, 2008, Ms. Eaddy's claim is governed by the pre-ADAAA standard for claims based on "being regarded as" disabled. As another district court recently explained, "with respect to any claim of disability prior to January 1, 2009, where the claim is one of being perceived as disabled, plaintiff must show that the employer regards the plaintiff as disabled *within the meaning of the ADA*, and not merely that plaintiff is regarded as having some measure of a disability or impairment." *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10cv10, 2010 U.S. Dist. LEXIS 107373, at *24-*25 (E.D.N.Y. Oct. 6, 2010) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 872 (2d Cir. 1998)) (emphasis added). In other words, a plaintiff stating this sort of claim must show that the employer regarded her as having "a physical or mental impairment that substantially limited one or more [of the plaintiff's] major life activities." 42 U.S.C. § 12102(2)(A) (2006).

---

[2] Prior to the 2008 Amendment to the ADA, this language appeared in 42 U.S.C. § 12102(2), rather than 42 U.S.C. §12102(1).

Thus, the first question in this case is whether the Defendant perceived Ms. Eaddy as having an impairment that caused her to be substantially limited in a major life activity. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998). "Major activities" of life include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998), as well as, *inter alia*, "sitting, standing, lifting, or reaching." *Colwell*, 158 F.3d at 642. "In deciding whether a particular activity is a 'major life activity,' [the Second Circuit] [asks] whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Id.* Therefore, under the pre-2009 ADA, a plaintiff claiming discrimination on the basis of "being regarded as having [a disability]" must show that she was regarded as having an impairment that "would be significantly limiting to 'the average person in the general population.'" *Id.* at 644. Ms. Eaddy has not made such a showing.

Contrary to Ms. Eaddy's contentions, *see* Mem. in Opp'n [doc. # 31] at 8-9, 23-24, the fact that Chief Norwood described Ms. Eaddy's behavior as "irrational, irate, and uncooperative as well as paranoid" in his letter to the Civil Service Commission is not evidence that he viewed her as having a disability under the terms of the ADA. There is no indication in Chief Norwood's letter that he was using the terms "irrational" and "paranoid" in a clinical sense. *See* Letter of Bryan Norwood to Ralph Jacobs, Ex. F. to Mem. in Supp. [doc. # 28-1] at 23. The paragraph in which Chief Norwood uses those terms reads as follows:

> Please be advised that probationary Police Officer Arnetha Eaddy has shown difficulty in compensating for the demands of this profession during her first four weeks on the road without a Field Training Officer. Several episodes have been documented in which she has become irrational, irate, and uncooperative in a

> manner that disrupts her ability to effectively patrol her designated sector. She is paranoid about a conspiracy to persecute her in some fashion, and she has shown an inability to get along with both her partner and her immediate peers.

*Id.* Any reasonable jury would interpret this paragraph to mean that Chief Norwood viewed Ms. Eaddy's difficulties as directly related to the special demands of her job. Chief Norwood's reference to Ms. Eaddy being paranoid is not a suggestion that Ms. Eaddy suffers from paranoid delusions in the psychiatric sense, but rather that she is irrationally distrustful of her peers and the police department. Moreover, in the same letter, Chief Norwood makes reference to Dr. Holzman's evaluation of Ms. Eaddy, which did not conclude that Ms. Eaddy suffered from any psychological impairment, but rather found that it was "highly likely that [Ms. Eaddy] [was] not fit for duty."

Ms. Eaddy is correct that in some circumstances, an employer's belief that an employee is severely socially or psychologically limited can constitute a belief that the employee suffers from a disability under the ADA. For example, the Second Circuit has held that being regarded as having an impairment that "severely limits the plaintiff's ability to connect with others, *i.e.* to initiate contact with other people and respond to them, or to go among other people – at the most basic level of these activities" could constitute a disability within the meaning of the statute. *Jacques v. DiMarzio*, 386 F.3d 192, 203 (2d Cir. 2004). However, the Second Circuit has emphasized that "[t]he standard is not satisfied by a plaintiff whose basic ability to communicate with others is not substantially limited but whose communication is inappropriate, ineffective, or unsuccessful." *Id.* Thus, for example, the Second Circuit has previously rejected a plaintiff's claim that "'poor judgment, irresponsible behavior and poor impulse control,' the grounds stated by the defendant for not hiring the plaintiff, constituted a mental impairment within the meaning of the [ADA]." *Francis v. City of Meriden*, 129 F.3d 281, 285 (2d Cir. 1997). Nothing in the

record suggests that Chief Norwood or other agents of the Defendant viewed Ms. Eaddy as having an impairment that "severely limit[ed] [her] ability to . . . initiate contact with other people and respond to them, or to go among other people . . . at the most basic level of [those] activities." *Jacques*, 386 F.3d at 203. Indeed, all the evidence suggests that Chief Norwood and the Defendant simply regarded Ms. Eaddy as unfit to perform the duties of a police officer.

Ms. Eaddy claims that a reasonable jury could conclude that she was regarded as suffering from an impairment that substantially limited a major life activity because the Defendant discharged her from the police force, rather than extending her probationary period. But the City of Bridgeport's termination of Ms. Eaddy is not in itself evidence that the Defendant regarded Ms. Eaddy as having a disability as that term is defined in the ADA. A belief that the plaintiff is not competent to perform a particular job does not constitute a belief that the plaintiff is substantially limited in a major life activity. "When the major life activity in question is working, the plaintiff must be perceived as unable to perform a 'broad class of jobs.'" *Hammond v. Keyspan Energy*, 349 F. App'x 629, 631 (2d Cir. 2009) (quoting *Giordano v. City of N.Y.*, 274 F.3d 740, 749-50 (2d Cir. 2001)). To raise a genuine issue of material fact on this point, Ms. Eaddy would have to present evidence that the Defendant "believed that she suffered from a condition that prevented her from working in a broad class of jobs, not just the job that she previously had." *Roberts v. Health Ass'n*, 308 F. App'x 568, 571 (2d Cir. 2009) (summary order). The fact that the Defendant discharged the Plaintiff from the position of police officer implies no more than that it deemed the Plaintiff unfit for one particular type of job.

Nonetheless, Ms. Eaddy suggests three other grounds on which a reasonable jury could infer that the Defendant regarded Ms. Eaddy as being disabled under the ADA. First, Ms. Eaddy argues that a jury could conclude that the Defendant did not terminate her on the basis that she

was unfit for duty because, according to her, "[t]he only evidence which the civil service commission had before it with regard to the plaintiff's fitness for duty at the time of her termination indicated that she was fit for duty." Pl.'s Local R. 56(a)2 Statement [doc. # 32] ¶ 19. Considering that Ms. Eaddy herself testified that the Civil Service Commission relied on Dr. Holzman's report in making its decision, *see* Eaddy Dep. [doc. # 31-4] at 38:6-10, the Civil Service Commission was indisputably presented with some evidence indicating that Ms. Eaddy might not be fit for duty. Moreover, it is undisputed that the Civil Service Commission only took up the issue of Ms. Eaddy's employment after Chief Norwood sent a letter suggesting that Ms. Eaddy was not fit for duty. While Ms. Eaddy cites Dr. Sarfaty's report in support of her claim that the only evidence available indicated she was fit for duty, Dr. Sarfaty's report simply was not "the only evidence available" to the Commission.

Second, Ms. Eaddy hints that insofar as the Defendant did regard her as unfit for duty, that view arose out of a view that Ms. Eaddy was psychologically impaired. Specifically, Ms. Eaddy states that the Defendant "regarded [her] as not being fit for duty as a police officer based on her admission for a psychological condition at St. Vincent's Medical Center and Hall-Brooke Behavioral Health Services." *See* Pl.'s Local R. 56(a)2 Statement [doc. # 32] ¶ 23. In support of that claim she cites Dr. Holzman's evaluation and Defendant's Exhibit F [doc. # 28-1] at 22-41, which includes correspondence from and about Ms. Eaddy that was forwarded to Chief Norwood. While two letters in Exhibit F do mention Ms. Eaddy's admission to St. Vincent's, the majority of documents relate to Ms. Eaddy's performance on the job and relations with other police officers. None of the letters suggest that the Defendant regarded Ms. Eaddy as having a disability as defined in the ADA, let alone that the Defendant terminated Ms. Eaddy because it regarded her as having a disability.

Third, Ms. Eaddy argues that a reasonable jury could conclude that the Defendant regarded her as being disabled because she was required to undergo a psychological evaluation. *See* Mem. in Opp'n [doc. # 31] at 14. However, requiring an employee to submit to a fitness for duty examination is not evidence that the employer regards the employee as having a disability, as that term is defined in the ADA. *See Colwell*, 158 F.3d at 647; *Doe v. Bd. of Educ.*, 63 F. App'x 46, 49 (2d Cir. 2003) (summary order). Indeed, given that the examination in this case related to Ms. Eaddy's psychological fitness for duty as a police officer – one particular profession – it was not an examination that even addressed the question of whether Ms. Eaddy suffered from a mental impairment that would substantially interfere with a major life activity.[3]

For the foregoing reasons, no reasonable jury could conclude that the Defendant regarded Ms. Eaddy as suffering from a "disability" as that term is defined in the ADA, and Ms. Eaddy cannot meet her *prima facie* burden. Therefore, the Court need not reach the second and third steps of the burden-shifting framework applied to ADA employment discrimination claims.

## IV.

In addition to her federal claim, Ms. Eaddy brings a claim under Connecticut General Statutes § 46a-60(a)(1). Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966). A court may decline to

---

[3] Although Ms. Eaddy's Memorandum in Opposition discusses the ADA prohibition on requiring employees to submit to overbroad medical examinations, Ms. Eaddy's Complaint [doc. # 1] only asserts that the Defendant discriminated against her on the basis of disability when it terminated Ms. Eaddy, citing 42 U.S.C. § 12112(a). The Complaint makes no mention of § 12112(d), which prohibits medical examinations and inquiries "as to whether an employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(a). Nor does the Complaint allege that the Defendant discriminated against Ms. Eaddy when it sent her to Dr. Holzman for evaluation.

exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Because the Court grants Defendant's Motion for Summary Judgment with regard to Ms. Eaddy's federal claim, the Court declines to exercise supplemental jurisdiction over Ms. Eaddy's remaining state law claim. Should she wish to do so, Ms. Eaddy remains free to raise her state law claim against Defendant in the Connecticut Superior Court.

## V.

The Court therefore **GRANTS** Defendant's Motion for Summary Judgment [doc. # 28] with respect to Ms. Eaddy's ADA claim. The Court **DISMISSES** Ms. Eaddy's CFEPA claim without prejudice to renewal in state court. **The Clerk is directed to enter judgment for the Defendant on the Plaintiff's ADA claim and to close this file.**

IT IS SO ORDERED.

/s/        Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 12, 2011.**